*673 OPINION.
Lansdon:
The deficiencies here in question rest solely on the Commissioner’s allegation that in the exchange of certain assets for shares of stock at April 8, 1920, the petitioners realized a taxable gain in the amount of $138,820.85. It is necessary, therefore, to determine 'whether, at the date of the exchange, the stock received had a fair market price or value in excess of the fair market price or value of such assets at March 1, 1913. All the stock was closely held. Ho sales of shares establishing a fair market value or a market for the stock were proved by either party. In the absence of such sales we can determine the fair.market value of the stock only by ascertaining the value of the assets for which it was issued. Walter v. Duffy, 287 Fed. 41; Phillips v. United States, 12 Fed. (2d) 598; Appeal of Wallis Tractor Co., 3 B. T. A. 981.
Although the Commissioner bases his determination on alleged profit resulting from appreciation in market value of certain tangible property owned by the petitioners at March 1, 1913, at the date of the transfer, it is obvious that we can not so restrict our consideration of the issue here involved. We must determine whether the exchange of the assets as a whole, tangible and intangible, for the stock resulted in gain, and, since we must base our decision on the fair market price or value of such assets at March 1, 1913, as compared with the fair market value of the stock measured by the value of the same assets at the date of transfer, it follows that we must ascertain the fair market value at each date of all the assets involved.
The facts relating to the tangible property are not in dispute. The parties agree that the cost of the assets in question was $272,012.62; that such cost is of record on the books of the partnership at March 1, 1913; that as the result of an appraisal and certain additional purchases it was carried on the books of the company at a value of $282,446.46 at the date of the transfer; that the accrued depreciation reserve at April 8, 1920, was $138,820.85; and that the depreciated cost at that date was $143,625.99. The Commissioner asserts that the assets in question had a market value in the amount of $282,446.46 at the date of transfer. Although the burden of proof of a less or different value rests on the petitioners, the Commissioner introduced an appraisal as of November 15, 1919, made by the petitioners for accounting and insurance purposes, in support of his determination. The petitioners introduced a witness who had been employed by them in 1913, and also at a date subsequent to the transaction, who testified that he was thoroughly familiar with the assets, that they were worth less in 1920 than at the basic date, and that, in his judgment, no one in the market for newspaper equipment would have *674 considered their purchase at the book cost as of March 1, 1913. No inventories were introduced. No one made any attempt to fix the market value of the assets at the date of the transfer in dollars and cents. We conclude from the evidence on this point that the tangible assets involved had a value less than the amount of $282,446.46 determined by the Commissioner, but how much less, we are unable to say.
The evidence in support of the petitioners’ contention that the value of the intangible assets declined very materially between the basic date and the transfer in question is much more clear and persuasive. A witness, who" has bought and sold many large newspapers, both before and since 1913, and who qualified as thoroughly competent to give an opinion on the basis for the market value of such properties, testified that the circulation structure of the Bulletin had a fair market value of at least $15 per name at March 1, 1913, and that such value was not more than $10 a name in 1920. He attributed this decline in value to the reduced circulation of the Bulletin and to its decline from first to third or fourth place in circulation and advertising receipts in the evening newspaper field in San Francisco. He also testified that in his opinion, based on the fact that two competing news service associations have successfully invaded the evening news field since the basic date, the Associated Press franchise owned by the partnership at March 1,1913, and, at that date worth $100,000, had declined greatly in value prior to the transfer here involved. The only evidence adduced by the Commissioner was a report of an appraisal of the petitioners’ assets made by an appraisal company as of November 15, 1919, which indicated that assets which had been in use all the way from 7 to 25 years and had cost $272,012.62, then had a fair market value of $282,446.46.

Judgment will be entered after 20 days’ notice, under Rule 50.